**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR-07-138S** |
| | : | |
| | : | |
| **SOUVANH KEOSOUVANH** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE FEDERAL RULE OF CRIMINAL PROCEDURE 404(b) EVIDENCE**

The defendant is charged in the Indictment with, inter alia, conspiracy to commit a Hobbs Act robbery (Count 3). That conspiracy involved an agreement between the defendant and three other men to invade the home of cocaine dealers at gun point, and rob those dealers of their cocaine. Pursuant to Federal Rule of Evidence 404(b), the defendant has moved to preclude evidence of a prior conviction -- his 2001 Rhode Island state court conviction for conspiracy to commit robbery, breaking and entering a home with the intent to commit robbery, and three counts of armed robbery. This conviction arose from a Warwick home invasion in which the defendant and at least two other men entered a home at gunpoint and proceeded to rob the occupants. The defendant does not stop with the evidence of the Warwick conviction. He also moves to preclude his own statements in this case to undercover ATF Special Agent Wing Chau bragging about his experience and expertise in committing home invasions. The defendant attempts to justify his motion with a bland claim that the probative value of the Warwick evidence is "minimal at best"

and is “substantially outweighed by the potential for ‘unfair prejudice, confusing of the issues, or misleading the jury.’” He articulates no reason whatsoever as to why his recorded, braggadocio statements to Special Agent Chau should also be tossed onto the evidence trash heap.

Whether he offers a reason or not, the result with respect to the two categories of evidence is the same: neither should be precluded. Indeed, to the extent that the defendant anticipates raising an entrapment defense at trial, his motion borders on frivolous. As set forth below, under clear First Circuit precedent, all of his prior bad acts are relevant to the predisposition element of the entrapment defense and should be admitted for purposes of rebutting that defense. In the event the defendant chooses not to raise an entrapment defense, the facts surrounding his Warwick conviction may nonetheless become relevant should he deny any intent to commit the offenses he is charged with in this case. Intent is also the reason why his statements in this case to Special Agent Chau concerning his home invasion experience and expertise are admissible. The First Circuit has held, time after time, that such statements are admissible to establish a defendant’s intent to commit the conspiracy with which he is charged, and to provide context to his conversations.

## BACKGROUND

In 2001, the defendant was convicted in Kent County, Rhode

Island, Superior Court of conspiracy to commit robbery, breaking and entering a dwelling with the intent to commit robbery, and first degree robbery (three counts). These charges arose from a home invasion committed by the defendant and several other men in Warwick, Rhode Island, in which the defendant and at least two other men invaded the home at gunpoint and robbed the occupants. Caught after a car chase, the defendant (and several other men) subsequently pleaded guilty. On the conspiracy count, the defendant was sentenced to a ten-year suspended sentence. On the breaking and entering a dwelling with the intent to commit robbery count, he was sentenced to ten years at the ACI, with six years to serve and four years suspended/probation. On the first degree robbery counts, he was sentenced to twenty years at the ACI, with six years to serve and fourteen years suspended/probation. He was still on probation for the Warwick home invasion at the time of the incidents giving rise to the case before this Court.

In March and April of 2007, the defendant met several times with undercover ATF Special Agent Wing Chau. During these meetings, the defendant offered to provide a “crew” to commit a robbery, at gunpoint, of Providence cocaine dealers.[1] The defendant repeatedly bragged about his past experience, and indeed, his expertise, in committing home invasions, as well as the reliability and expertise

[1] This was a sting operation; unknown to the defendant, the cocaine dealers were ficticious.

of his “crew”. For example, during a meeting on March 28, 2007, when Special Agent Chau first told the defendant that he was considering setting up a robbery of a cocaine supplier, the defendant responded, “I got a people that, like, is good at that . . . they’re really good at it, and they won’t talk, I guarantee you.” Similarly, during a meeting on April 2, 2007, the defendant told Special Agent Chau that his people were “good”, and that “they’re down and they don’t talk. That’s what you need.” On April 5, 2007, the defendant again bragged about his experience and expertise and that of his “crew”:

KEOSOUVANH: Okay, two or three, and I have four people, we’ll probably, I mean -

S/A CHAU: (inaudible)

KEOSOUVANH: These people are good though. They’re quick too. I’m quick too. I’m good. I’ve been doing it since I was like 15.

S/A CHAU: Oh yeah?

KEOSOUVANH: I’ve been doing -

S/A CHAU: Oh yeah?

KEOSOUVANH: - home invasions since I was 15. And I finally got caught at the age of 20.

S/A CHAU: Oh, yeah, how many did you have fuckin’ do before you got caught?

KEOSOUVANH: Man, I did like, ten, twelve.

S/A CHAU: Oh yeah, all out, all out there?

KEOSOUVANH: Yeah, I go out of state do ‘em.

S/A CHAU: Oh yeah.

KEOSOUVANH: Yeah.

S/A CHAU: Alright, that's fucking good, man.

KEOSOUVANH: Yeah, but I'm good too.

During the same meeting, the defendant effectively gave Special Agent a tutorial on how to conduct a home invasion:

KEOSOUVANH: Because the house is kinda, you've gotta know which one, the house, and stuff like that because, sometimes you have to go through one door to another door -

S/A CHAU: Yeah.

KEOSOUVANH: It's already making noise, you know what I'm saying?

S/A CHAU: Yeah.

KEOSOUVANH: They be ready for you. They might blow your head off.

SA CHAU: Yeah.

KEOSOUVANH: You know what I'm saying? So you've gotta like, kind of know how the house is, you know what I'm saying, be quick about it, and plan (inaudible) who's in the front, who's in the back. But if there's two doors, that's the chance you take, you just kick in the door quick, go in, boom, and then do your movin'.

The defendant again bragged about his experience and expertise during

a telephone conversation with Special Agent Chau on April 25, 2007:

S/A CHAU: Oh, so you're going to use the, the people that's here already?

KEOSOUVANH: Yeah, the people that's here already.

S/A CHAU: Okay, you uh, you sure, they uh, you sure they're going to be able to do it, 'cause you were saying that the, uh, your other boy there, you know what I mean, he knows how to take care of business and stuff.

KEOSOUVANH: Oh yeah, he's, he's just real good, but I'm, I'm, I'm confident. I've been doing this for a long time. So, I just have to be the man of the crew (inaudible).

S/A CHAU: Oh, okay, alright, so uh, so we, we, so we don't need, need him, uh?

KEOSOUVANH: Nah.

On April 26, 2007, the defendant and three other men, Nheat Nhim, Vixay Phommarath and Khek Choummalaithong were arrested by ATF Special Agents as they met with Special Agent Chau to stage for the robbery. Nhim, Phommarath and Choummalaithong were all wearing latex rubber gloves when they were arrested. The defendant, Phommarath and Choummalaithong all possessed bandannas. Nhim possessed a black ski mask. ATF Special Agents recovered two loaded handguns and a loaded shotgun, as well as a disabled (unknown to the defendant) handgun that Special Agent Chau had provided to the defendant at his request.

## ARGUMENT

**I. SHOULD THE DEFENDANT RAISE A DEFENSE OF ENTRAPMENT, EVIDENCE CONCERNING HIS PAST CRIMINAL ACTIVITY IS RELEVANT TO AND IS ADMISSIBLE FOR PURPOSES OF RUBUTTING THAT DEFENSE.**

"Rule 404(b) allows '[e]vidence of other crimes, wrongs, or acts' to be introduced for certain permitted purposes, such as 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" United States v. Whitney, ___ F.3d ___, 2008 WL 1851095 at *6 (1st Cir. April 28, 2008). "There is a two-step analysis to determine admissibility of other acts evidence under this rule." Id. "First, the court must decide whether the evidence is 'specially probative of an issue in the case' and is not merely offered to show the defendant's bad character or propensity for crime." Id (citing United States v. Smith, 292 F.3d 90, 98-99 (1st Cir. 2002)(quoting United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir 1996)). "Even if the special relevance is established, the evidence must still satisfy Rule 403." Id. "Pursuant to Rule 403, 'evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" Id. As the First Circuit has held, however, "Rule 403 explicitly states [that] the law shields the defendant 'against unfair prejudice, not against all prejudice.'" Id (quoting Smith,

292 F.3d at 99)(emphasis in original).[2]

In cases where a defendant raises an entrapment defense, because of the nature of the defense, prior bad act evidence generally meets this standard. "Entrapment is an affirmative defense." United States v. Shinderman, 515 F.3d 5, 14 (1st Cir. 2008). "To undergird that defense, the accused must make a prima facie showing both that the government induced the commission of the charged crime and that he (the accused) lacked a predisposition to engage in it." Id.[3] The First Circuit has made plain: "[i]n situations where the defendant employs entrapment as a defense to criminal liability, prior bad acts relevant to a defendant's predisposition to commit a crime are wholly probative and can overcome the Rule 404(b) bar." United

[2] Accord, United States v. Gonzalez-Sanchez, 825 F.2d 572, 581 (1st Cir. 1987)(With respect to prejudice, the test is not whether "the evidence is incriminating; [] all highly probative evidence is highly prejudicial in this sense. The question is whether the defendant suffers unfair prejudice.")(emphasis in original).

[3] To meet this "entry-level burden", "[t]he defendant must adduce 'some hard evidence' that 'governmental actors induced [him] to perform a criminal act he was not predisposed to commit.'" Shinderman, 515 F.3d at 14 (quoting United States v. Rodriguez, 858 F.2d 809, 814 (1st Cir. 1988)). Once a defendant meets this burden, "the government must prove beyond a reasonable doubt that no entrapment occurred." Id. With respect to the "inducement" prong of the two-part entrapment test, "[i]mproper inducement requires a showing not only that the government afforded a defendant an opportunity to commit a crime, but also that it brought to bear 'something more - something akin to excessive pressure, threats or the exploitation of an unfair advantage.'" Shinderman, 515 F.3d at 14 (quoting United States v. Ramos-Paulino, 488 F.3d 459, 462 (1st Cir. 2007))(emphasis added). With respect to pre-disposition, the First Circuit has held that "the right way to ask the question . . . [is to] ask how the defendant likely would have reacted to an ordinary opportunity to commit the crime." United States v.

States v. Van Horn, 277 F.3d 48, 57 (1st Cir. 2002). Accord, United States v. Houle, 237 F.3d 71, 78 (1st Cir. 2001)("other acts that bear on a defendant's predisposition to commit a crime are highly probative when, like here, the defendant claims entrapment")(emphasis added). This is because, as the Supreme Court held over seventy-five years ago, "if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing on that issue." United States v. Russell, 411 U.S. 423, 429 (1973)(quoting Sorrells v. United States, 287 U.S. 435, 451 (1932)). Furthermore, the evidence that may be admitted is not limited to the prior conviction itself, because "'it really is the underlying conduct, perhaps more than the conviction itself, which becomes a material issue concerning the previous offense.'" Van Horn, 277 F.3d at 58 (quoting United States v. Reed, 977 F.2d 14, 16 (1st Cir. 1992)).

Here, the defendant is charged in Count 3 of the Indictment with conspiracy to obstruct commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951. In support of this charge, the government expects to present evidence that the defendant conspired with Nihm, Phommarath and Choummalaithong to invade the home of cocaine dealers at gun point, and to rob those dealers of their cocaine. The 2001 Warwick case involved a markedly similar home invasion, in which the defendant and two other men entered a home

---

Gendron, 18 F.3d 955, 962 (1st Cir. 1994)(emphasis in original).

in Warwick, at gun point, and stole certain items from the occupants. The similarity between the defendant's conduct in the Warwick case and the conduct with which the defendant is charged in this case plainly renders that prior conduct probative and admissible on the issue of the defendant's predisposition to commit the crimes charged. See United States v. Mazza, 792 F.2d 1210, 1223 (1st Cir. 1986)(in drug distribution case, evidence of defendant's prior cocaine purchase material and admissible in light of defendant's entrapment defense); Van Horn, 277 F.3d at 57-58 (evidence of defendant's uncharged involvement in burglary of explosives five years earlier relevant and admissible in felon in possession of explosives case). Like the evidence concerning the Warwick home invasion, the defendant's own statements in this case to undercover Special Agent Chau concerning his past involvement in home invasions, the very object of the Hobbs Act conspiracy here, are highly probative on the issue of predisposition, and therefore should also be admitted.

## II. EVIDENCE CONCERNING THE 2001 WARWICK HOME INVASION MAY BE ADMISSIBLE TO ESTABLISH THE DEFENDANT'S INTENT.

As already noted, pursuant to Rule 404(b), prior bad act evidence may be admissible to prove a defendant's intent. Accordingly, irrespective of whether or not the defendant raises an entrapment defense, should the defendant challenge whether he had the intent to commit the crimes he is charged with in the Indictment, evidence concerning the 2001 Warwick home invasion may well become relevant

and probative on that issue. The government would suggest that the Court resolve the admissibility of the Warwick evidence on the issue of the defendant's intent at trial. The government will provide notice to the Court before attempting to introduce such evidence on this issue.

## III. EVIDENCE OF THE DEFENDANT'S OWN STATEMENTS CONCERNING HIS CRIMINAL EXPERIENCE IS RELEVANT TO AND IS ADMISSIBLE FOR PURPOSES OF ESTABLISHING THE DEFENDANT'S INTENT.

Even if the defendant eschews an entrapment defense, his statements concerning his criminal experience and expertise to undercover ATF Special Agent Chau are nonetheless admissible. As already noted, under Rule 404(b), prior bad act evidence is admissible to prove a defendant's intent. The First Circuit has held that this is particularly true in conspiracy cases like this one, where intent is a critical element of the crime:

> Conspiracy, one of the charges against [the defendant], is an offense in which knowing participation and intent is an issue of crucial import. We have thus held that evidence of similar past crimes or wrongful acts may be especially appropriate in conspiracy prosecutions.

United States v. Scelzo, 810 F.2d 2, 4 (1st Cir. 1987)(citing United States v. Crocker, 788 F.2d 802, 804 (1st Cir. 1986)(evidence of prior arrest for uttering counterfeit checks relevant to show intent in

subsequent trial for conspiracy to cash counterfeit checks); United States v. Zeuli, 725 F.2d 813, 816 (1st Cir. 1984)(evidence of prior extortion demands relevant to prove intent in a conspiracy to extort charge)). Accord, Gonzalez-Sanchez, 825 F.2d at 581 ("We have often upheld the admissibility of evidence of past crimes in later trials for conspiracies to commit identical or similar crimes. In such circumstances, the evidence of past similar crimes is helpful to show his mode of operation, intent, and knowing participation in the alleged conspiracy.").

In Scelzo, the defendant was charged, inter alia, with conspiracy to commit wire and credit card fraud arising out of a scheme involving Rhode Island and Massachusetts fur businesses. 810 F.2d at 3. The First Circuit held that under Rule 404(b), the defendant's statements "that he had been engaged in credit card fraud for years" were admissible. Id. Those statements had been made to an undercover agent in a separate, unrelated New Jersey investigation, yet they were nonetheless admissible. Here, the defendant's statements that, to paraphrase, he had "been involved in home invasions for years", were made in the same investigation which led to the conspiracy and other charges against him.

The First Circuit's decision in Scelzo is hardly alone. In United States v. Rivera-Sola, the defendant was charged with attempting to possess a controlled substance with intent to distribute and possession of a controlled substance with intent to

distribute. 713 F.2d 866, 867 (1st Cir. 1983). During a meeting with an undercover DEA Agent, the defendant

> bragged of his involvement in other large-scale drug transactions, and clearly implied that he had been smuggling narcotics for a number of years. He said that he had previously smuggled ten kilograms of cocaine, some marijuana, and 25,000 quaalude tablets.

Id at 868. On appeal, the defendant challenged the admission of these statements at trial under Rule 404(b). Id at 871. The First Circuit upheld their admission as "properly admissible to prove intent." Id at 871-72.

Similarly, in United States v. Dworkin, the defendant, charged with attempting to possess marijuana with the intent to distribute it, "described his substantial involvement in other drug smuggling over the previous three years" in a meeting with an undercover Drug Enforcement Administration Agent. 855 F.2d 12, 14, 27 (1st Cir. 1988). These statements were admitted in evidence by the district court under Rule 404(b). On appeal, the defendant "complain[ed] that the extensive evidence concerning other bad acts unfairly prejudiced his trial on a discrete narcotics transaction." Id at 27. The First Circuit rejected the argument:

> As to [the defendant], the evidence was properly admissible under Rule 404(b) to provide context for the ensuing conversations between [the undercover agent] and [the defendant]. It explained how the two came into contact, and

> why [the undercover agent] was prompted to offer the fictitious sale to [the defendant]. It allowed the jury to understand the nature of the relationship between the two men, and revealed the perspectives of the two in the conversations that were to follow. Evidence may be introduced pursuant to Rule 404(b) to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. As we have stated, evidence of other criminal acts is admissible when it is so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof.

Id (emphasis in original)(internal citations and punctuation omitted). Furthermore, the Dworken Court held that the defendant's statements to the undercover DEA agent concerning his past involvement in drug smuggling were also "admissible to show that [the defendant] had the intent to purchase", and that in that conspiracy and attempt case, the defendant's intent "is much more readily comprehended when viewed in full circumstantial context." Id.

To the extent any additional authority is required to defeat the defendant's motion, the First Circuit's decision in United States v. Mazza, 792 F.2d 1210 (1st Cir. 1986), is worth noting. In Mazza, the defendant was convicted of conspiracy to possess cocaine with intent to distribute it. 792 F.2d at 1212. On appeal, he challenged the District Court's admission under Rule 404(b) of statements made by the defendant to an undercover DEA Agent posing as a source of drugs that he was "in organized crime up here" and was "out on bail

for first degree murder." Id at 1222. The First Circuit held that the statements were properly admitted, because they "tended to show an effort by [the defendant] to impress [the undercover Agent] with his 'experience' in the drug trade and thereby to encourage [the undercover agent] to go ahead with the transaction." Id at 1223. Thus, the First Circuit held, "[the defendant's] remarks were probative of his intent."

Defendant claims in a footnote that it is "important to note" that the government "created this robbery scenario" and therefore controlled the facts and were able to construct a scenario as similar to Mr. Keosouvanh's prior case as they chose". Defendant's Memorandum, p.3 n. 1. Of course, law enforcement controls the facts in every sting operation, and the First Circuit has held that sting operations are a legitimate law enforcement tool: "[d]espite the fact that undercover operations by their nature involve elements of furtiveness, duplicity, and manipulation, we have never held that such initiatives are per se unfair. To the contrary, we think that the Executive Branch is free, within broad limits, to set such snares for unwary criminals." United States v. Gifford, 17 F.3d 462, 470-471 (1st Cir. 1994)(emphasis in original). That the defendant here was caught, or, more accurately, leapt, into the snare is the fault of the defendant and the defendant alone. As the Ninth Circuit has observed, "[e]ven in the dream-like world of federal sting operations, when you drink from the bottle marked poison, it will

disagree with you sooner or later." United States v. Rodriguez, 360 F.3d 949, 960 (9th Cir. 2004).

At bottom, the defendant cannot escape admission of his own statements to Special Agent Chau bragging about his past experience and experience in committing home invasions. Like the similar statements made by defendants in the cases cited above, the defendant's statements place the story of his criminal activity in this case in context and are probative on the critical issue of intent in this conspiracy case. Their probative value is not outweighed, let alone substantially outweighed, by any danger of unfair prejudice, confusion of the issues, or misleading the jury. Indeed, to redact them from the recordings in this case would confuse the jury. The defendant's motion should be denied.[4]

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

[4] It is worth noting that, notwithstanding that the government provided transcripts of the recordings in this case in March, nowhere in his Motion does the defendant identify which of his statements in the approximately 150 pages of transcripts are objectionable. In the unlikely event that the Court concludes that the defendant's motion has any tread on its tires, it should require the defendant to identify precisely which statements he objects to so that the admissibility of those particular statements can be appropriately analyzed.

/s/ Peter F. Neronha
PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza – 8th Fl.
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov

Dated: May 27, 2008

Certificate of Service

I hereby certify that on the 27th day of May, 2008, a copy of the within "Government's Opposition To Defendant's Motion In Limine To Exclude Federal Rule of Criminal Procedure 404(b) Evidence" was served by way of the Electronic Filing System on Mary S. McElroy, Esq., Assistant Federal Defender and Counsel for the Defendant, 10 Weybosset Street, 3rd Floor, Providence, RI 02903.

/s/ Peter F. Neronha
PETER F. NERONHA
Assistant U.S. Attorney
RI Bar No. 5327
U.S. Attorney's Office
50 Kennedy Plaza – 8th Fl.
Providence, RI 02903
Tele: (401) 709-5000
FAX: (401) 709-5001
peter.neronha@usdoj.gov